[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 6, 2009
THOMAS K. KAHN
CLERK

No. 08-10987
Non-Argument Calendar

_____

D. C. Docket No. 06-00004-CR-T-26-TGW

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DAVID MIRANDA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(May 6, 2009)

Before TJOFLAT, DUBINA and BLACK, Circuit Judges.

PER CURIAM:

David Miranda appeals his convictions for possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B), (b)(2).  The district court granted Miranda's motion to suppress evidence pertaining to child pornography as to his computer tower but denied it with regard to his laptop computer, external hard drive, and uninstalled hard drive.

We review "a district court's denial of a motion to suppress [as] a mixed question of law and fact."  *United States v. Smith*, 459 F.3d 1276, 1290 (11th Cir. 2006).  We review the district court's findings of fact for clear error, construing the facts in the light most favorable to the prevailing party below, and its application of the law *de novo*.  *Id.*  The evidence brought forth at trial can be considered in determining whether the denial of a motion to suppress constitutes reversible error. *United States v. Newsome*, 475 F.3d 1221, 1224 (11th Cir.), *cert. denied*, 128 S. Ct. 218 (2007).

## I.

On appeal, Miranda argues the police violated the Fourth Amendment's Warrant Clause by searching his computer for information outside the scope of the warrant, which was limited to searching for evidence of counterfeit software.  He relies on *United States v. Carey*, 172 F.3d 1268 (10th Cir. 1999), to contend that the pornographic images on his computer were in closed files, and thus, were not

within plain view. Further, Miranda asserts: (1) the police had a warrant to search for something other than child pornography; (2) the searching officer noticed files with sexually suggestive names, unrelated to the reason for initiating the search; and (3) the officer abandoned his original search to open additional files, without obtaining a second search warrant, based on a reasonable suspicion that the additional files might contain child pornography.

Pursuant to the Fourth Amendment, search warrants must "particularly describe the place to be searched, and the persons or things to be seized" in order to "protect individuals from being subjected to general, exploratory searches." *United States v. Khanani*, 502 F.3d 1281, 1289 (11th Cir. 2007) (internal quotations omitted). However, the particularity requirement of the Fourth Amendment must be applied with a practical margin of flexibility, taking into account the nature of the items to be seized and the complexity of the case under investigation. *See United States v. Wuagneux*, 683 F.2d 1343, 1349 (11th Cir. 1982). When a warrant authorizes the seizure of documents, "an officer acting pursuant to such a warrant is entitled to examine any document he discovers," in order to "to perceive the relevance of the documents to the crime." *United States v. Slocum*, 708 F.2d 587, 604 (11th Cir. 1983). Moreover, "[i]n searches for papers, it is certain that some innocuous documents will be examined, at least cursorily, in

3

order to determine whether they are, in fact, among those papers authorized to be seized." *Andresen v. Maryland*, 96 S. Ct. 2737, 2749 n. 11 (1976).

"The 'plain view' doctrine permits a warrantless seizure where (1) an officer is lawfully located in the place from which the seized object could be plainly viewed and must have a lawful right of access to the object itself; and (2) the incriminating character of the item is immediately apparent." *Smith*, 459 F.3d at 1290 (citing *Horton v. California*, 110 S. Ct. 2301, 2308 (1990)). "An example of the applicability of the 'plain view' doctrine is the situation in which the police have a warrant to search a given area for specified objects, and in the course of the search come across some other article of incriminating character." *Id.* (internal quotations omitted) (quoting *Horton*, 110 S. Ct. at 2307). Of course, the officers "must have probable cause to believe the object in plain view is contraband." *Id.*

In this case, the searching officer was searching Miranda's hard drives pursuant to a warrant. In doing so, the officer had a lawful right to view each file to determine whether or not it was evidence of counterfeiting crimes. *See Slocum*, 708 F.2d at 604. The child pornography files were intermingled with counterfeiting files, so they were in plain view. Once the officer saw child pornography on Miranda's hard drives, its incriminating character was immediately apparent, so the officer could seize the files. *See Smith*, 459 F.3d at

1290.  This is distinguishable from the child pornography found on Miranda's computer tower, which the district court suppressed because it was found during a search conducted solely for the purpose of finding child pornography, outside the scope of the counterfeiting warrant.  For these reasons, the district court did not err in denying Miranda's motion to suppress the child pornography found on his laptop computer, external hard drive, and uninstalled hard drive.

## II.

Miranda also argues the district court erred in refusing to exclude time-stamp evidence obtained from the external hard drive and uninstalled hard drive.  Specifically, he argues this evidence was "fruit of the poisonous tree" because the information originated from the computer tower's internal timing mechanism, and evidence pertaining to the computer tower was suppressed by the district court.

In addition to the illegally obtained evidence, a court may suppress incriminating evidence that was derived from that primary evidence as "fruit of the poisonous tree."  *United States v. Terzado-Madruga*, 897 F.2d 1099, 1112-13 (11th Cir. 1990).  When determining whether evidence is "fruit of the poisonous tree" and therefore must be excluded, the relevant question is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means

5

sufficiently distinguishable to be purged of the primary taint." *Wong Sun v. United States*, 83 S. Ct. 407, 417 (1963) (internal quotations omitted). The government can establish that evidence has been "purged of the primary taint" by showing that the evidence was discovered from an independent source, would have been discovered inevitably by lawful means, or was so attenuated from the illegality "as to dissipate the taint" of the unlawful conduct. *Terzado-Madruga*, 897 F.2d at 1113. Under the "independent source" doctrine, the challenged evidence is admissible if it was obtained from a lawful source, independent of the illegal conduct. *Id.*

Here, the district court granted Miranda's motion to suppress child pornography found on his computer tower but declined to suppress the actual computer tower, as it was lawfully seized pursuant to a search warrant. The time-stamp evidence was unrelated to the suppressed child pornography because it was derived from the internal timing mechanism in the computer tower, a lawful source. For these reasons, the district court did not err by denying Miranda's motion to suppress the time-stamp evidence.

**AFFIRMED.**